## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 25-00244-02 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| GABRIEL JACOBS | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss Indictment (Record Document 61) filed by Defendant Gabriel Jacobs ("Jacobs"). Jacobs moves to dismiss Count One of the Superseding Indictment (Record Document 54) charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), arguing that the statute is unconstitutional as applied to him. The Government filed an Opposition (Record Document 72). For the reasons explained below, the Motion is **DENIED**.

### FACTUAL BACKGROUND

On June 3, 2025, agents with the Caddo Parish Sheriff's Office and the Shreveport Police Department executed a search warrant at 909 Wilton Place in Shreveport, Louisiana. See Record Document 72 at 1–2. Jacobs was located in the living room of the residence. See id. The northeast bedroom was identified as the room where Jacobs had been staying. See id. at 2. Inside that bedroom, officers located a loaded Springfield Armory XDS-9 pistol under a pillow on the bed, along with two full magazines. See id. at 2. Also mounted on the wall in the bedroom was another firearm. See id. Additional firearms and marijuana were discovered elsewhere in the residence. See id.

At the time of the charged conduct, Jacobs had sustained multiple prior felony convictions punishable by imprisonment for a term exceeding one year. See id. Those

convictions include: (1) Aggravated Assault with a Deadly Weapon (2008), for which he was sentenced to five years of confinement; (2) Assault by Drive-By Shooting (2011), for which he was sentenced to one year of imprisonment; and (3) Attempted Possession of a Firearm by a Convicted Felon (2012), for which he was sentenced to five years of imprisonment. See id.

On February 4, 2026, Jacobs was charged in a Superseding Indictment with possession of a firearm by a convicted felon in violation of § 922(g)(1). See id. He now challenges that statute as unconstitutional as applied to him under New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). See Record Document 61. Relying on Bruen and United States v. Diaz, 116 F.4th 458 (5th Cir. 2024), Jacobs contends that the Second Amendment presumptively protects his conduct and that the burden shifts to the Government to demonstrate that disarming him is consistent with the Nation's historical tradition of firearm regulation.

## LAW AND ANALYSIS

### I.    Applicable Standards

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." "Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on 'a defect in the indictment,' including 'failure to state an offense.'" United States v. Wilson, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)). A court can resolve a motion to dismiss an indictment before trial when

the motion presents a question of law. See United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011).

In Bruen, the Supreme Court provided a two-step framework for Second Amendment constitutional challenges. See 597 U.S. at 24. First, "Bruen requires the Court to decide 'if the Second Amendment's plain text covers' the conduct at issue." Wilson, 2024 WL 4436637, at *4 (citing Bruen, 597 U.S. at 24). Second, "the burden [...] shifts to the government to demonstrate that regulating [Defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" Id. (citing Bruen, 597 U.S. at 24). "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin.'" Diaz, 116 F.4th at 467 (citing Bruen, 597 U.S. at 30). To determine whether regulations are relevantly similar under the Second Amendment, the Court must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Bruen, 597 U.S. at 29.

## II.  Analysis

In considering the first step of the Bruen analysis, the Court must consider whether the Second Amendment's plain text covers the instant conduct. See 597 U.S. at 24. The Fifth Circuit in Diaz made clear that the Second Amendment's plain text covers felons as among "the people" covered by the Second Amendment. See 116 F.4th at 466. Thus, the Court will proceed to the second step under Bruen.

In analyzing the second prong, the Court first must determine whether there are historical analogues that "impose a comparable burden on the right of armed self-defense" during the timeframe of the Second Amendment's ratification. Bruen, 597 U.S.

at 27. In upholding a § 922(g)(1) conviction predicated on a felony theft conviction, the Diaz Court relied on three categories of historical analogues:

> (i) historical laws that authorized capital punishment and estate forfeiture as consequences of felonies, (ii) two proposals from state constitutional conventions that excluded those deemed dangerous from the right to bear arms, and (iii) the colonial-era "going armed" laws first discussed in Rahimi that "prohibited going armed offensively and authorized forfeiture of weapons as punishment."

U.S. v. Ezell, 2024 WL 4729314, at *2 (W.D. La. Nov. 8, 2024) (citing Diaz, 116 F.4th at 467–68, 470) (discussing U.S. v. Rahimi, 602 U.S. 680 (2024)) (internal citations omitted). In all three categories discussed in Diaz, the consequences of committing certain crimes encompassed forfeiture of the right to bear arms.

The historical analogues discussed above are rooted in the common purpose of disarming individuals viewed as violent or as a threat to public safety. These analogues represent the longstanding tradition of firearm regulation that allows the "Government to disarm individuals who present a credible threat to the physical safety of others." Rahimi, 602 U.S. at 700.

Here, at least one of Jacobs's predicate felony convictions establishes the required nexus to violence and public safety. Jacobs's conviction for assault by drive-by shooting places him squarely into the category of individuals who present a threat to public safety.[1] Like in Diaz, the enforcement of § 922(g)(1) against Jacobs is "relevantly similar to that of the [historical analogues]: to deter violence and lawlessness." 116 F.4th at 469. The Court's conclusion is further supported by Fifth Circuit precedent. In United States v.

---

[1] The Court notes that Jacobs was sentenced to one year of imprisonment for this offense. However, § 922(g)(1) applies to offenses "punishable by imprisonment for a term exceeding one year." La. R.S. 14:37.1 provides for imprisonment with or without hard labor for not more than ten years. Because the statutory maximum exceeds one year, the conviction qualifies as a predicate offense under § 922(g)(1) regardless of the sentence actually imposed.

Morgan, the Fifth Circuit held that § 922(g)(1) was constitutionally applied to a defendant whose sole predicate conviction involved a drive-by shooting. See 147 F.4th 522. Here, the Court stands on even firmer ground, as Jacobs's prior convictions reflect repeated violent and firearm-related misconduct. Accordingly, the Government has met its burden in showing that § 922(g)(1) is constitutional as applied to Jacobs. Thus, Jacobs's Motion to Dismiss fails.

## CONCLUSION

Based on the reasons explained above, Jacobs's Motion to Dismiss (Record Document 61) is **DENIED**.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 19th day of February, 2026.

_____
JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT